865 F.2d 1267
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ESTATE OF Kenneth DANIELS, by Tina DANIELS, etc., Appellant,
v.
CITY OF CLEVELAND, et al., Appellees.
 No. 87-3017.
 United States Court of Appeals, Sixth Circuit.
 Jan. 11, 1989.
 
 Before LIVELY, MERRITT and KRUPANSKY, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 This is an appeal from judgment on a jury verdict in favor of the defendants. The plaintiff, widow of Kenneth Daniels, sought damages for her husband's death after he was shot by a City of Cleveland police officer. The plaintiff named the officer who fired the fatal shot, his partner, and the city as defendants.
 
 I.
 A.
 
 2
 On December 15, 1982, at approximately 12:47 a.m., Cleveland Police officers Walter Thomas and Margaret Litnar Doran responded to a radio assignment reporting that men with guns had entered a house. Thomas and Doran had worked together for several months, and frequently responded to such assignments. When they arrived at the house Doran stayed behind and Thomas went to the house to investigate. They apparently had not discussed any specific plan for their investigation or their approach to the house.
 
 
 3
 Thomas, without his cap but otherwise in uniform, first looked through the front windows of the house. He saw two males and one female, but nothing unusual. He then approached the front door. According to Thomas, his gun was drawn but hidden behind his back to prevent alarming anyone coming to the door. Below the door, a step of about one foot in width extended out to the sidewalk. The outer door was an aluminum screen door, allowing visibility through the top half into an alcove that led into the kitchen. A covered all-terrain vehicle was parked near the outer door.
 
 
 4
 Thomas knocked on the door approximately four times with his flashlight without announcing that he was a police officer. Simultaneously with the last knock a man, Daniels, appeared from the kitchen and came into the alcove toward the door. At this point the two men's eyes met. Thomas attempted to say "police," but apparently could not (he testified that he got a lump in his throat). According to Thomas, at this time Daniels, still in the house, rapidly approached him with a gun in his hand. Thomas then jumped backwards, tripping over the all-terrain vehicle, landed prostrate on top of it, and slid down the vehicle. He testified that he believed at this point that he had been shot. He also testified that he still did not identify himself as a police officer or ask Daniels to halt.
 
 
 5
 With his back and buttocks on the ground, Thomas saw the door open. An arm emerged with a gun and pointed it toward him; Thomas closed his eyes and fired twice in the direction of the gun. After he fired, Thomas jumped up and, joined by Doran, went inside to secure the house. As it turned out Thomas had killed Daniels, who was in his own house.
 
 
 6
 Testimony at trial revealed that in the hours preceding the shooting Daniels had a fight with his wife, and Mrs. Daniels had taken their small child and fled the home. In connection with the fight, Daniels armed with a gun accosted a female in a car, believing her to be his wife. In addition, Daniels had been drinking that night and also had smoked marijuana. The coroner's report indicated that Daniels had a blood alcohol level of .09 and a presence of valium.
 
 B.
 
 7
 Daniels's widow filed this action for damages against Thomas, Doran and the City of Cleveland, relying on 42 U.S.C. Sec. 1983 and state law permitting recovery for wrongful death. At the close of the plaintiff's case at trial, the court granted Officer Doran's motion for directed verdict on all claims against her. The court also granted the motion with regard to certain claims against Thomas and the city. Thus, the only claims presented to the jury were the state wrongful death cause of action and the Section 1983 claim, both against Thomas, and the respondeat superior claim against the city.
 
 
 8
 In its charge to the jury, the district court stated that the federal claim against Thomas alleged the use of excessive force against Daniels. The instructions defined excessive force as "[t]hat amount of force which is beyond the need and circumstances of the particular event or which is not justified in light of all the circumstances." The court then related excessive force to one of the Section 1983 claims:
 
 
 9
 A person has a substantive due process right to enjoy the security of his life and limb. This substantive due process right to enjoy the security of life and limb has been extended to include the right to be free from the use of excessive force by law enforcement officers.
 
 
 10
 This protection of a fundamental right to life by the due process clause extends to protection from an official's abusive exercise of his powers to inflict grossly undue harm. The test under the due process clause is whether the police officer's conduct shocks the conscience.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 The mere fact that the evidence may establish that the defendant Walter Thomas shot and killed the decedent is not proof, in and of itself, that the defendant Walter Thomas acted beyond his lawful authority. The defendant, Walter Thomas, had the lawful authority and duty under law to use such physical force as may have been reasonably necessary to protect himself from injury.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 Unless you find further that the defendant used more or greater force or means than would have appeared to a reasonable police officer in like circumstances to be necessary in order for him to perform his duties, there was not a Constitutional violation.
 
 
 17
 The plaintiff objected to this portion of the instructions for failing to present her Fourth Amendment claim and for limiting recovery on her due process claim to a finding that Thomas's conduct shocked the conscience of the jury. This limitation applies only to property or liberty deprivations, not life interests, according to the plaintiff. The jury should have measured Thomas's actions against a standard of reasonableness, inherent in Daniels's Fourth Amendment right, the plaintiff asserts. She also objected to a contributory negligence instruction related to the state wrongful death action. Finally, she objected to an instruction which appeared to permit a finding of self-defense to defeat her Section 1983 claim, and to various other charges.
 
 
 18
 The jury found for Thomas on the Section 1983 claim and for Thomas and the city on the wrongful death claim. In answers to special interrogatories addressed to the state claim, the jury found that both Thomas's and Daniels's negligence proximately caused Daniels's death. However, 70% of the negligence was attributable to Daniels. Under Ohio law this finding required a judgment for Thomas on the wrongful death claim.
 
 II.
 
 19
 On appeal the plaintiff contends that the district court committed several reversible errors in its treatment of her Section 1983 claim. She argues that since Thomas's negligence created the condition requiring deadly force in response, the self-defense instruction should not have been given. The plaintiff points out that the jury found Thomas negligent. There was evidence that Thomas did not follow prescribed procedures in approaching the house and knocking on the door. In addition, she maintains that the district court erred in confining her Section 1983 claim to a substantive due process violation. She argues that the district court should have instructed the jury to measure Thomas's actions against the Fourth Amendment reasonableness standard. The "shocks the conscience" standard, she asserts, limited the jury, to her prejudice; the court should have charged that gross negligence sufficiently evidences unreasonableness under the Fourth Amendment. Finally, she contends that the district court erred by instructing on qualified immunity. She argues that a clearly established right existed in 1982 protecting a person against deprivations of life without due process of law. There can be no issue of good faith in a "police misconduct" case, she maintains.
 
 
 20
 The defendant Thomas responds that self-defense was charged properly in relation to both state and federal claims and that a person need not be totally free of negligence to rely on self-defense. Thomas distinguishes cases relied upon by the plaintiff. The defendant presents two responses to the Fourth Amendment arguments. First, Thomas argues that no seizure occurred because he was not attempting to detain or apprehend Daniels, but was acting in self-defense, when he fired. Therefore, the Fourth Amendment does not apply. In the alternative, Thomas contends that failure to mention the Fourth Amendment in the instructions, if error, was harmless since the district court correctly charged on excessive force and the reasonableness of his actions was considered in that connection. He simply relies on a recent Supreme Court decision to support the district court's charge on good faith immunity.
 
 
 21
 The parties have also argued a number of issues relating to the state wrongful death claim. Since we find no error in the district court's treatment of these issues, we do not discuss the positions of the parties.
 
 III.
 
 22
 We will address first the issues relating to the jury charge actually given.
 
 A.
 
 23
 The district court instructed on qualified immunity as follows:
 
 
 24
 If a police officer objectively believes that he is acting in good faith and in accordance with law, he is entitled to the defense of qualified, good faith immunity.
 
 
 25
 The standard is whether a reasonable police officer, acting in the same or similar circumstances, would act the same as the defendant did.
 
 
 26
 Therefore, if you find by a preponderance of the evidence that a reasonable and competent police officer would have acted the same as defendant Thomas under the same or similar circumstances and that a reasonable and competent police officer acted with a good faith belief that this conduct was reasonable, valid and lawful, the defendant has prevailed on his affirmative defense of good faith immunity and you shall return a verdict for the defendant.
 
 
 27
 This instruction incorporated the objective standard of Harlow v. Fitzgerald, 457 U.S. 800 (1982), and posed the "relevant question" described in Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034 (1987), as the "objective (albeit fact-specific) question whether a reasonable officer could have believed [Thomas's firing his revolver] to be lawful, in light of clearly established law and the information [he] possessed." 107 S.Ct. at 3040. The instructions correctly submitted the issue of qualified immunity.
 
 B.
 
 28
 The district court gave a self-defense instruction, based on Ohio criminal law, which concluded as follows:
 
 
 29
 If the defendant Walter Thomas had reasonable grounds and an honest belief that he was in immediate danger of death or great bodily harm, and that the only means of escape from such danger was by killing Kenneth Daniels, then he was justified, even though he was mistaken as to the existence of such danger.
 
 
 30
 The defendant must establish that Kenneth Daniels, decedent, was the aggressor and that the defendant did not himself provoke and cause the shooting and death of Kenneth Daniels.
 
 
 31
 The plaintiff contends that Officer Thomas's negligence in approaching the door without giving any notice, visual or audible, that he was a policeman created the conditions that made his resort to deadly force likely. Under these circumstances, she argues, it was error to give Thomas the benefit of a self-defense instruction. The plaintiff asserts that this instruction defeats her Section 1983 claim because the force used appears commensurate with his fear of death, not excessive. She relies on two decisions from other circuits.
 
 
 32
 In Gilmere v. City of Atlanta, 774 F.2d 1495 (11th Cir.1985), cert. denied, 476 U.S. ----, 106 S.Ct. 1970 (1986), the court affirmed a judgment against a policeman who shot and killed a suspect after he had been restrained. After taking an intoxicated man into custody, two officers beat him as they dragged him to a patrol car. He broke free, and during an ensuing scuffle, one of the officers shot him. The district court found, at a bench trial, that the officer's fear of bodily injury from the suspect was subjectively reasonable because the suspect had broken free and was moving toward the officer. It went on to find, however, that the officer's belief that his life was in danger was not objectively reasonable and could not justify the killing. The court of appeals agreed, finding nothing in the circumstances to justify a fear of bodily harm. Id. at 1501. The plaintiff reads this decision to announce a rule that if an officer provokes a suspect into a threatening position, the officer's fear of bodily harm does not justify using deadly force.
 
 
 33
 In Young v. City of Killeen, 775 F.2d 1349 (5th Cir.1985), the widow of a suspect who was shot and killed by a policeman brought a Section 1983 action. The district court found, at a bench trial, that the officer acted negligently and violated good police procedure in a number of respects. The court further found that his fault increased the danger for the officer and created a condition where fatal error was likely. The court of appeals found, however, that despite the officer's negligence, the district court believed the officer's claim that he fired in self-defense when he thought his life was threatened. Id. at 1352. The officer's negligent conduct related to the way he stopped and approached the suspect, not with the shooting itself. His negligence in creating a situation where the suspect's actions gave him reasonable cause to believe he was in danger of serious bodily harm did not negate his right to use deadly force when faced with such a threat.
 
 
 34
 Although the cases discussed above involved bench trials, both opinions appear to recognize self-defense as a justification for using deadly force when an officer reasonably believes that the person shot poses a threat of serious bodily harm. Both cases involved Section 1983. They differ in drawing a line at which self-defense may defeat a claim. The Gilmere court appears to hold that if an officer's egregious misconduct causes the suspect to attempt to retaliate, fear of bodily harm from such retaliation is not a legitimate basis for self-defense. On the other hand, Killeen appears to hold that the validity of a self-defense claim must be measured solely by the situation facing the officer at the time he uses deadly force. Killeen clearly supports Thomas rather than the plaintiff, and neither case holds that an officer's negligence invariably precludes reliance on self-defense. Thomas did not abuse Daniels and thus create a situation involving retribution. Thomas's alleged negligence and failure to follow prescribed procedures occurred prior to the appearance of Daniels with a weapon. That appearance, and the threat it presented, support Thomas's reliance on self-defense. We conclude that evidence of Thomas's negligence did not render the district court's self-defense instruction incorrect or inappropriate.
 
 IV.
 
 35
 At oral argument and in subsequent briefing the parties have argued for and against the plaintiff's claim that Thomas's conduct violated the Fourth Amendment. The Supreme Court held in Tennessee v. Garner, 471 U.S. 1 (1985), that a Fourth Amendment "seizure" occurs when a police officer uses deadly force to prevent the escape of a suspect. The plaintiff contends that the district court erred in refusing to instruct the jury that a Fourth Amendment seizure occurred when Thomas shot Kenneth Daniels, who was not fleeing, but was advancing toward him with a weapon aimed in his direction.
 
 
 36
 The Supreme Court decided Garner in 1985. In Carter v. Chattanooga, 850 F.2d 1119 (6th Cir.1988), this court, sitting en banc, held that Garner should not be applied retroactively. Since the events in this case occurred in 1982 and Garner was decided in 1985, it is clear that the district court did not err in refusing to submit the plaintiff's Fourth Amendment issue to the jury. Since we do not apply Garner in this case, we do not reach the plaintiff's argument that the district court should have framed its qualified immunity instruction in light of her Fourth Amendment claim.
 
 
 37
 The judgment of the district court is affirmed.